UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

RED HOOK BOAT CLUB, INC.,

        Plaintiff,

-- against --

THE TOWN BOARD OF TOWN OF RED HOOK;
ROBERT McKEON, INDIVIDUALLY AND IN HIS
CAPACITY AS TOWN SUPERVISOR OF THE TOWN
OF RED HOOK, BILL HAMEL, INDIVIDUALLY AND
IN HIS CAPACITY AS DEPUTY SUPERVISOR AND
MEMBER OF THE TOWN BOARD OF THE TOWN OF
RED HOOK, CHRISTINE KANE, INDIVIDUALLY
AND IN HER CAPACITY AS TOWN BOARD MEMBER FOR
THE TOWN OF RED HOOK, JACOB TESTA, INDIVIDUALLY
AND IN HIS CAPACITY AS TOWN BOARD MEMBER FOR
THE TOWN OF RED HOOK, AND JULIA SOLOMON,
INDIVIDUALLY AND IN HER CAPACITY AS TOWN BOARD
MEMBER OF FOR THE TOWN OF RED HOOK,

        Defendants.

**COMPLAINT**

**CASE NO. 7:25-cv-03647-PMH**

---

    Plaintiff-Plaintiff RED HOOK BOAT CLUB, INC. ("Boat Club"), a non-profit corporation, by and through its undersigned attorneys, alleges and states as follows as and for its Complaint for declaratory and related relief and damages.

### NATURE OF THE ACTION

    1.    Plaintiff Red Hook Boat Club, Inc., brings the instant combined proceeding/action for a Judgment of this Court annulling, setting aside, and vacating Town of Red Hook, NY "Local Law No. 1 of 2025," adopted by a 3-0 vote (two members absent) of respondent Red Hook Town Board on February 11, 2025. A true and correct copy of Local Law No. 1 is annexed hereto as **Exhibit 1**.

1

2. As alleged more fully below, the Town Supervisor of the Town of Red Hook and the individual members of the Town Board have enacted a zoning code amendment that uniquely and adversely impacts Plaintiff Red Hook Boat Club. This amendment, which applies only to the Boat Club's valuable waterfront parcels along the Hudson River, removed Marinas as a permitted use under the Town's zoning code and imposed onerous new restrictions on the Club's longstanding waterfront operations. The amendment's targeted effect on a single entity raises serious constitutional concerns, including that it constitutes a punitive legislative act in violation of the constitutional prohibitions on bills of attainder and retaliation for the exercise of protected rights.

3. In March 2025, the Boat Club commenced a combined declaratory judgment action and special proceeding pursuant to CPLR Articles 30 and 78, challenging Local Law No. 1 of 2025 on several state law grounds. These included: (i) that the rezoning, and particularly the unprecedented prohibition on Marinas, contravenes N.Y. Town Law § 263 by failing to conform to any comprehensive planning rationale; (ii) that the law exceeds the Town's jurisdiction by seeking to regulate matters within federal authority, including navigation on the Hudson River; (iii) that the law is arbitrary and irrational in its selective application of land use restrictions based on the identity of the land user rather than the use itself; and (iv) that the Town failed to comply with the State Environmental Quality Review Act ("SEQRA"), Article 8 of the N.Y. Environmental Conservation Law.   A true and correct copy of the Verified Petition is annexed hereto as **Exhibit 2**.

4. At no point during the lengthy rezoning process did the Town Supervisor or any member of the Town Board publicly propose or discuss acquiring the Boat Club property through eminent domain. Only after the Boat Club filed the above-referenced lawsuit did the Town

announce, for the first time, its intent to pursue a forced taking of the Boat Club's land. Since then, the Town has undertaken an aggressive and highly unusual campaign that appears designed to pressure the Boat Club and surrounding community, culminating in the Town Supervisor's public statement that he would seek authorization for a condemnation proceeding under Article 2 of the N.Y. Eminent Domain Procedure Law.

5. This action is therefore brought against the Town Supervisor and each member of the Town Board in their individual capacities. It alleges that the provisions of Local Law No. 1 of 2025—including the elimination of Marina uses and other restrictive measures—were not the product of a legitimate planning objective, but rather were enacted with the specific intent to reduce the fair market value of the Boat Club's property. The result is a diminished valuation that would benefit the Town were it to proceed with condemnation, effectively using the zoning power as a means of artificially deflating just compensation. Such conduct constitutes an impermissible use of legislative power for punitive and retaliatory purposes.

6. Additionally, or in the alternative, this action alleges that the Town Supervisor's pursuit of eminent domain proceedings was not motivated by a legitimate public purpose, but instead undertaken in retaliation for the Boat Club's exercise of its right to challenge Local Law No. 1 of 2025 in court. By accelerating condemnation efforts immediately after the filing of the lawsuit, the Town has sought to punish protected petitioning activity and to circumvent judicial review of potentially unlawful legislative conduct. Such actions violate well-settled constitutional principles, including the First Amendment right to petition the government and the prohibition against retaliatory government action.

7. The facts further underscore the selective nature of the Town's actions: the Boat Club's land is the only property in the Town to be affected by the Marina ban; the Boat Club is the

only maritime organization subject to the new zoning limitations; and it is the sole landowner identified for potential condemnation. This singular focus, coupled with the sequence of events surrounding the litigation, supports a plausible inference that the Town has employed its zoning and eminent domain powers in a retaliatory and punitive manner that offends fundamental constitutional protections.

**PARTIES**

8. The Red Hook Boat Club, Inc. is a New York not-for-profit corporation that operates the historic Red Hook Boat Club, located at 246 Dock Road in the Hamlet of Barrytown, Town of Red Hook, along the banks of the Hudson River. The Club is situated within one of the most prominent and defining features of Barrytown—its scenic and historically significant waterfront.

9. For nearly seventy years, the Boat Club has served as a longstanding institution within the Red Hook community. Since acquiring its first parcel of riverfront land in 1948, the Club has gradually assembled the waterfront property that comprises its current site. Throughout its existence, the Boat Club has demonstrated a sustained commitment to the preservation and responsible use of the Hudson River shoreline, serving as a careful and consistent steward of both land and water.

10. Today, the Boat Club continues its mission by hosting member events and offering boat launching, wet-slips, and dry storage to its members and their guests. It also provides a safe haven for recreational and pleasure vessels in times of emergency or need. Beyond its maritime functions, the Boat Club is widely recognized for its support of local civic groups and charitable organizations, reflecting its broader role as a contributor to the well-being and fabric of the surrounding community.

11. Under Local Law No. 1 of 2025, the Boat Club is classified as a "boat club" and its associated docks are subject to regulation under that designation. Having existed for decades prior to the adoption of current zoning laws, the Boat Club has historically operated as a lawful non-conforming use. The newly enacted zoning provisions alter the framework for such uses, imposing new restrictions that affect the Club's continued operation and longstanding presence on the waterfront.

12. The Town of Red Hook is a political subdivision of the state of New York and issued the final determinations at issue here by a 3-0 vote (two absences) on February 11, 2025.

13. Robert McKeon is the Town Supervisor of and upon information and belief resides in the Town of Red Hook.

14. Bill Hamel is the Deputy Town Supervisor of the Town of Red Hook, a member of the Town Board and upon information and belief resides in the Town of Red Hook.

15. Christine Kane is a member of the Red Hook Town Board and upon information and belief resides in the Town of Red Hook.

16. Jacob Testa is a member of the Red Hook Town Board and upon information and belief resides in the Town of Red Hook.

17. Julia Solomon is a member of the Red Hook Town Board and upon information and belief resides in the Town of Red Hook.

18. It was not until March 31, 2025, that the Town of Red Hook announced a plan to acquire the Boat Club's private property via eminent domain (or otherwise), displace its current owners and members, then develop, construct, and operate some form of Town-owned boat club or marina in the lands Plaintiff has owned and occupied for decades.

## JURISDICTION AND VENUE

19. Pursuant to 28 U.S.C. § 1131, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

20. This case arises, in part or in the alternative, from Defendants' profligate violations of Plaintiffs' rights protected by the United States Constitution.

21. 42 U.S.C. §§ 1983 and 1985 collectively provide a private federal cause of action for "deprivation of any rights, privileges, or immunities secured by" the United States Constitution and federal law, including by way of conspiracies to do so.

22. This case arises, in part or in the alternative, from Defendants' profligate violations of Plaintiffs' rights protected by federal law.

23. Robert McKeon, Bill Hamel, Christine Kane, Jacob Testa, and Julia Solomon, each an employee, agent, or elected official, is a state-actor acting under color of state law for purposes of 42 U.S.C. § 1983

24. Plaintiffs ask the Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), to the fullest extent permitted, over their state constitutional and statutory claims.

## STATEMENT OF FACTS

37. Plaintiff's boat club is the only boat club or marina located in Barrytown. Upon information and belief, the Town holds an interest in certain waterfront property in Barrytown, which it has not yet developed. The Town's longstanding interest in establishing a publicly operated park and marina in this area is a matter of public knowledge within the community.

38. For decades, the Town has regulated "Marinas, boat clubs, docks and boat slips" under Section 143-107 of the zoning code. These regulations have historically included oversight of parking facilities, vessel pump-out systems, restrooms, and waste receptacle placement, and

encourage alternative methods for addressing the needs of boaters. Based on available records, the Red Hook Boat Club appears to be the only facility that has consistently operated under these provisions.

39. The Boat Club has been a lawful non-conforming use for more than seventy years and continues to provide a combination of public and private water-dependent services. There is no apparent concern regarding overdevelopment or excessive proliferation of marinas or boat clubs in the Town at this time.

40. On November 20, 2024, the Town Supervisor introduced, without prior recommendation from the Planning Board or other advisory entities, a comprehensive set of zoning amendments. These changes primarily addressed the siting of cannabis dispensaries and regulation of short-term rentals.

41. Included in the same proposal—referred to as "Local Law (Proposed) D of 2024"—were a set of unrelated provisions revising the regulation of marinas, boat clubs, docks, and boat slips. Docks and slips, as essential accessory uses to marinas and boat clubs on the Hudson River, are integral to the operations of Plaintiff, the only such facility in the Town.

42. Although the proposed law included provisions affecting the Town's waterfront area, the Town Board's agenda package for the November 20, 2024 meeting did not include a resolution referring the matter to the Waterfront Advisory Committee, as required under Section 68 of the Red Hook Code. A true and correct copy of the Town Board's November 20, 2024, public notice and agenda package is annexed hereto as **Exhibit 3**.

43. The proposed regulatory amendments were introduced without reference to any corresponding revision to, or identified need under, the Town's comprehensive plan, which was last updated nearly three decades ago.

44. By December 10, 2024, the proposal had been revised and reintroduced as "Local Law (Proposed) D-1 of 2024." The revised draft was added to the agenda for the Town Board's December 10, 2024 meeting shortly before the meeting. Once again, no formal referral was made to the Waterfront Advisory Committee to assess consistency with the Local Waterfront Revitalization Program (LWRP). A true and correct copy of the agenda package for the Town Board's December 10, 2024, meeting is annexed hereto as **Exhibit 4**.

45. A further revision designated "Local Law (Proposed) D-2 of 2024," was introduced approximately three weeks later. Community concerns began to emerge regarding the proposal. Nevertheless, the Town Board again did not formally refer the matter to the Waterfront Advisory Committee for consistency review. A true and correct copy of the agenda package for the Town Board's December 30, 2024, meeting is annexed hereto as **Exhibit 5**.

46. Prior to the Town Board's meeting on January 14, 2025, the Boat Club submitted a written objection to the proposed law. This submission, included in the public record, identified procedural and substantive concerns with the proposed regulatory changes. A true and correct copy of Plaintiff's January 14, 2025, correspondence objecting to what was then known as "Local Law (Proposed) D-2 of 2024" is annexed hereto as **Exhibit 6**.

47. At the January 14, 2025 meeting, the Town Board held a public hearing on "Local Law (Proposed) D-2 of 2024" but also presented a new version, designated "Local Law (Proposed) D-3 of 2024." The Board proceeded to continue the hearing despite the substantive differences between the versions.

48. The Town Board supplemented the record by adding narrative materials related to its environmental review under the State Environmental Quality Review Act (SEQRA), Article 8 of the N.Y. Environmental Conservation Law. The Town Board, acting as the applicant for the

zoning changes, also prepared its own determination of LWRP consistency, without first seeking review from the Planning Board, which is the designated body for such determinations.

49. Upon information and belief, the revised law was not referred to the Waterfront Advisory Committee for an independent consistency review. A true and correct copy of the agenda package for the Town Board's January 14, 2025, meeting is annexed hereto as **Exhibit 7**.

50. On January 29, 2025, the Town Board convened a special meeting, during which it continued and then closed the public hearing on "Local Law (Proposed) D-3 of 2024." At that time, the Board acknowledged it had not yet received a recommendation from the Planning Board in its capacity as Waterfront Advisory Committee. The hearing closed without the benefit of that required input. A true and correct copy of the agenda package for the Town Board's January 29, 2025, meeting is annexed hereto as **Exhibit 8**.

51. Based on the meeting schedule, it appears that the Town Board did not transmit the relevant materials to the Planning Board until on or after January 30, 2025, in preparation for the Planning Board's February 3, 2025 meeting.

52. The Planning Board had not met since December 16, 2024—an interval of nearly six weeks.

53. The Planning Board's February 3, 2025 public notice and agenda were not updated to reflect the Town Board's January 29 materials, nor were they made available 72 hours in advance of the meeting.

54. At the February 3, 2025 meeting, the Planning Board Chair acknowledged that this was the first meeting at which the body had formally reviewed the proposed law in its designated role as the Waterfront Advisory Committee. This review occurred more than two months after the proposal was first introduced, and only after the Town Board had already closed the public hearing.

55. During the meeting, the Planning Board Chair and attorney referenced and relied upon the LWRP consistency documents and Coastal Assessment Form prepared by the Town Board.

56. These materials cited language in the Town's comprehensive plan encouraging commercial and service-oriented uses to be centered in existing hamlets and downtown areas. Without additional support, the materials characterized marinas and boat clubs as "retail commerce," thereby suggesting that such uses were inconsistent with the plan's preferred siting goal.

57. Ultimately, the Planning Board, acting as the Waterfront Advisory Committee, adopted the rationale provided by the Town Board, concluding that the proposed Town-wide ban on marinas and new limitations on boat clubs were not inconsistent with LWRP Policy 2, based on the classification of such facilities as "retail commerce."

58. On March 31, 2025, the Town disclosed, for the first time, its intent to acquire and operate a boat club on the Plaintiff's property. When asked about the mechanism for such acquisition, the Town confirmed that it intended to pursue eminent domain and planned to develop a public park and Town-operated boat club at the current site.

59. Later press reports reveal that the Town Supervisor was aware of the connection between the rezoning and the putative taking of private property and park development project and intends to implement the plan forthwith, going so far as to enact a Town Board resolution retaining legal counsel to commence the eminent domain process.

60. On April 28, 2025, the Town Board resolved to pursue the Boat Club's lands via eminent domain.

## COUNT I

61. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

62. The law of bills of attainder, as articulated in case law interpreting Article I, Section 9, Clause 3 of the U.S. Constitution, prohibits legislative acts that single out specific individuals or an identifiable group for punishment without the benefit of a judicial trial. The clause, while historically applied to capital sentences without trial, has evolved to encompass broader forms of legislative punishment.

63. Under prevailing jurisprudence, a law violates the Bill of Attainder Clause if it: Applies with specificity to an identifiable individual or class, and Imposes punishment, which is determined by a three-factor test: (i) whether the burden falls within the historical meaning of legislative punishment; (ii) whether the burden serves any legitimate, nonpunitive legislative purpose (the "functional test"); and (iii) whether there is evidence of legislative intent to punish.

64. The functional test is often the most important of the three. Even if a burden is not historically recognized as punishment, it may still qualify as such if it lacks a legitimate, nonpunitive purpose and has the effect of punishing disfavored persons or groups.

65. Applying these principles to the instant scenario where a legislature downzones a single identifiable property—for example, by prohibiting commercial marinas—and thereby depresses its market value in anticipation of future condemnation and eminent domain valuation, such an act constitutes punishment under the Bill of Attainder Clause.

66. Specificity: Downzoning that targets a single parcel or easily ascertainable property owner satisfies the specificity prong.

67. Punishment: Historically, confiscation of property or impairment of property rights has been recognized as a form of punishment.

68. Functionally, the downzoning serves no legitimate planning or environmental purpose and was tailored to diminish just compensation owed in an eminent domain proceeding; it therefore lacks a nonpunitive justification—thus failing the second, most important prong of the Bill of Attainder test.

69. The legislative record and circumstances reveal animus or a retaliatory motive against the Boat Club, thus supporting an inference of punitive intent.

70. Thus, legislative downzoning of the Boat Club property, done not for legitimate planning reasons but to suppress the property's value in anticipation of government seizure, constitutes legislative punishment—and hence violates the Bill of Attainder Clause—especially because Local Law No. 1 of 2025 is narrowly drafted to affect one identifiable entity.

## COUNT II

71. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

72. The First Amendment to the United States Constitution, applicable to the Town through the Fourteenth Amendment, guarantees individuals and associations the right to speak freely, to petition the government for redress of grievances, and to be free from retaliation for exercising those rights.

73. To state a claim for First Amendment retaliation, a plaintiff must establish that (1) it engaged in constitutionally protected activity; (2) the government took adverse action against it that would deter a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part by the plaintiff's protected activity.

74. Plaintiff Red Hook Boat Club engaged in protected First Amendment activity by submitting written objections, making public comments, and petitioning the Town through formal litigation challenging the enactment of Local Law No. 1 of 2025.

75. These activities, including participation in public hearings, submission of written correspondence for the public record, and the filing and prosecution of a lawsuit challenging the constitutionality and lawfulness of Local Law No. 1 of 2025, constitute core First Amendment activity protected under the rights to free speech and to petition the government.

76. In March 2025, after the Plaintiff had engaged in sustained, formal opposition to the law, and after litigation had commenced challenging the validity of Local Law No. 1 of 2025, the Town for the first time publicly disclosed its intent to acquire Plaintiff's property through the power of eminent domain.

77. The Town's stated intent to displace Plaintiff, take its private property, and replace it with a Town-operated boat club, was made while litigation concerning Local Law No. 1 of 2025 remained pending.

78. The proposed condemnation of Plaintiff's property constitutes an adverse government action sufficient to deter a person or organization of ordinary firmness from continuing to oppose government policy or to seek judicial relief.

79. The timing, context, and nature of the Town's announcement—including its express linkage to development goals long tied to the subject property—support a strong inference that the proposed eminent domain action was substantially motivated by animus toward Plaintiff's protected advocacy and litigation.

80. The Town has offered no neutral, compelling, or exigent reason for the sudden announcement of its intent to condemn Plaintiff's land at this time, after more than seven decades

of the Boat Club's lawful, continuous operation and during the pendency of litigation over the regulatory regime that now affects that land.

81. The Town's intent to acquire Plaintiff's property by eminent domain is retaliatory in nature and was taken at least in part because Plaintiff exercised its constitutional rights to oppose Local Law No. 1 of 2025 and to challenge it in court.

82. As a direct and proximate result of the Town's retaliatory conduct, Plaintiff has suffered and will continue to suffer irreparable harm, including the threat of losing its property, disruption of its operations, and a chilling of its First Amendment rights.

83. Plaintiff has no adequate remedy at law and is entitled to declaratory and injunctive relief prohibiting the Town from proceeding with or taking any further steps toward the condemnation of Plaintiff's property based on retaliatory motives.

## COUNT III

84. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

85. Plaintiff has a constitutionally protected property interest in its real property, including its lawful, long-standing, and historically recognized use of its waterfront parcels as a boat club and marina.

86. For more than seventy years, Plaintiff has operated the Red Hook Boat Club in continuous conformance with local law, and, as a legal non-conforming use, has made significant investment-backed expectations in the continued use of its property for recreational boating, dockage, and member-related activities.

87. The Town's enactment of Local Law No. 1 of 2025, which uniquely eliminated "Marinas" as an allowable use and subjected the Boat Club's operations to new, targeted constraints, directly and severely interferes with Plaintiff's vested property interests.

88. The Town's downzoning of the Boat Club's property—while preserving such uses elsewhere or not applying the same standards to any other property in the Town—was arbitrary, capricious, and not supported by any rational or legitimate public interest. It was not connected to any comprehensive plan update or environmental finding, and it lacked any factual basis justifying the targeting of Plaintiff's property.

89. These actions were undertaken with the intent and effect of punishing Plaintiff, chilling its exercise of constitutional rights, and reducing the fair market value of its property in anticipation of a government taking.

90. The Town's conduct shocks the conscience and constitutes an abuse of official power in violation of Plaintiff's right to substantive due process under the Fourteenth Amendment to the United States Constitution and Article I, § 6 of the New York Constitution. As a result of the Town's unlawful conduct, Plaintiff has suffered and continues to suffer significant harm, including loss of property rights, diminished property value, and deprivation of equal treatment under the law.

## COUNT IV

91. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

92. The Equal Protection Clause of the Fourteenth Amendment prohibits the government from treating similarly situated persons differently without a rational basis and from intentionally singling out an individual for adverse treatment based on improper motive.

93. Plaintiff is the only boat club or marina in the Town of Red Hook. Local Law No. 1 of 2025 exclusively and disproportionately impacted Plaintiff's property by eliminating "Marinas" as a permitted use, imposing new restrictions on dockage, and subjecting Plaintiff's operations to newly restrictive oversight.

94. Upon information and belief, no other landowner or use in the Town of Red Hook—whether commercial or recreational—was subject to the same changes or stripped of use rights in a similar manner.

95. Defendants intentionally and selectively imposed these burdens on Plaintiff, without any legitimate or rational basis for doing so, and for the purpose of reducing the compensation the Town would owe should it proceed with condemnation.

96. The Town's disparate treatment of Plaintiff was motivated by improper animus, a desire to retaliate against Plaintiff's protected activities, and to facilitate a taking of Plaintiff's property on unfair and coerced terms.

97. This conduct constitutes a violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, § 11 of the New York Constitution.

## COUNT V

98. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

99. 42 U.S.C. § 1983 provides a civil remedy against any person who, under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution and laws of the United States.

100. At all relevant times, Defendants were acting under color of state law in enacting Local Law No. 1 of 2025 and in furthering the Town's efforts to seize Plaintiff's property through eminent domain.

101. As described above, Defendants violated Plaintiff's clearly established constitutional rights, including: (a) the First Amendment right to petition the government for redress of grievances (retaliation claim); (b) the Fourteenth Amendment right to substantive due process; and (c) the Fourteenth Amendment right to equal protection of the laws.

102. The adverse zoning amendment and subsequent initiation of eminent domain proceedings were acts undertaken in retaliation for Plaintiff's protected conduct—namely, its filing of legal action to challenge the rezoning ordinance.

103. These acts were also carried out without a legitimate governmental purpose and arbitrarily targeted Plaintiff as the sole affected party, thereby depriving it of equal protection and substantive due process under the Fourteenth Amendment.

104. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered constitutional injury, monetary damages, reputational harm, and the threatened or actual taking of property without due process or just compensation.

105. Plaintiff is entitled to damages, declaratory and injunctive relief, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988

## COUNT VI

106. Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

107. Article I, § 6 of the New York Constitution guarantees due process of law before the deprivation of property or liberty interests.

108. Article I, § 8 guarantees the right of free speech and the right to petition the government for redress of grievances.

109. Article I, § 11 guarantees equal protection under the law.

110. By singling out Plaintiff through Local Law No. 1 of 2025 and initiating eminent domain proceedings in retaliation for Plaintiff's constitutionally protected legal challenge, the Town and its officers have violated these rights.

111. New York courts recognize implied private rights of action under the State Constitution where no alternative statutory remedy is available, particularly where damages are sought for constitutional violations committed by public officials.

112. Plaintiff seeks appropriate declaratory, injunctive, and monetary relief to redress these violations, including nominal and compensatory damages, and such other relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff Red Hook Boat Club, Inc., respectfully requests that this Court enter judgment in its favor and against Respondents and Defendants, and grant the following relief:

1. Declaratory Relief declaring and adjudging that:
   - Local Law No. 1 of 2025, as applied to Plaintiff, is unconstitutional, void, and unenforceable;
   - The Town's initiation or threat of eminent domain proceedings against Plaintiff constitutes unlawful retaliation in violation of the First Amendment and the New York State Constitution;
   - The Town's conduct has violated Plaintiff's rights to due process and equal protection under the United States and New York State Constitutions;
2. Preliminary and Permanent Injunctive Relief:
   - Enjoining the Town of Red Hook, its officers, employees, agents, and all persons acting in concert with them, from taking any steps to commence or further any eminent domain proceedings against Plaintiff's property;
   - Enjoining the enforcement of Local Law No. 1 of 2025 as applied to Plaintiff and its property;

3. Compensatory Damages in an amount to be determined at trial for harm caused by Defendants' constitutional and statutory violations;

4. Nominal Damages for the violation of Plaintiff's constitutional rights;

5. Punitive Damages against the individual Defendants in their personal capacities for their willful and malicious misconduct;

6. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and applicable state law;

7. Such other and further relief as the Court deems just, proper, and equitable

DATED:      May 5, 2025

                                                              YOUNG / SOMMER, LLC

                                                              William A. Hurst
*Attorneys for Plaintiff-Plaintiff*
*Red Hook Boat Club*
500 Federal Street, 5th Floor
Troy, NY 12180
Tel.: (518) 438-9907
Fax: (518) 438-9914
Email: whurst@youngsommer.com

19