UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RED HOOK BOAT CLUB, INC.,
Plaintiff,
-against-
THE TOWN BOARD OF THE TOWN OF RED HOOK,
Defendant.
------------------------------------------------------------------X

Case No. 25-cv-03647 (PMH)

## NOTICE OF MOTION IN LIMINE

PLEASE TAKE NOTICE that, upon the accompanying memorandum of law, plaintiff Red Hook Boat Club, Inc. will move this Court, before the Honorable Philip M. Halpern, at the Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York, on a date and at a time the Court sets, for an order under Rules 401, 402, 403, 404, and 408 of the Federal Rules of Evidence:

1. precluding defendant from offering evidence, eliciting testimony, or making argument about the race or ethnicity of the members of the Red Hook Boat Club, or about the racial or ethnic composition of its membership; and
2. precluding defendant from offering Defendant's Exhibits K, M, and N, and from eliciting testimony or making argument about the April 8, 2025, and May 2, 2025, communications between plaintiff's counsel and Daniel Spitzer, Esq., including any argument that plaintiff refused to negotiate.

Plaintiff makes this motion under Rule 6(B)(iii) of the Court's Individual Practices.

Dated: Delmar, New York
September 2, 2026

HURST LAW FIRM PLLC

*William Allen Hurst*

______________________________
William Allen Hurst, Esq.
Attorneys for Plaintiff
Red Hook Boat Club, Inc.

357 Delaware Avenue, P.O. Box 116
Delmar, New York 12054
Tel.: (518) 849-8652
whurst@hurstlawyer.com

TO: Adam L. Rodd, Esq., Drake Loeb PLLC, Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RED HOOK BOAT CLUB, INC.,
Plaintiff,
-against- Case No. 25-cv-03647 (PMH)
THE TOWN BOARD OF THE TOWN OF RED HOOK,
Defendant.
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE

## PRELIMINARY STATEMENT

This bench trial will decide only whether the Town Board adopted Local Law No. 1 of 2025 and pursued condemnation of the Boat Club's land because the Club spoke against Supervisor McKeon and sued. Plaintiff asks the Court to exclude from that trial two categories of defendant's proof that bear on no part of that question.

The first is race. Defendant's counsel asked Commodore Richard Ross at his deposition whether any Black individuals belong to the Club, drew the answer no, and then asked Ross whether he had any problems with that. Nothing in plaintiff's retaliation claim, and nothing in the Town's same decision defense, turns on the race of the people who hold Club memberships.

The second is a pair of emails between counsel. The Club filed its first Article 78 proceeding on February 21, 2025. The Town retained outside condemnation counsel on March 19, 2025, and disclosed its intent to condemn on March 31, 2025. That disclosure came from Daniel Spitzer, Esq., of that firm. He and plaintiff's counsel exchanged messages on April 8 and May 2, 2025, about whether the parties would meet and about what might be agreed on to avoid or replace eminent domain. Defendant listed those exchanges as Exhibits K, M, and N and questioned Ross about them to show that the Club refused to deal. Rule 408 forecloses that use.

## POINT I. STANDARD OF REVIEW AND BURDEN OF PROOF

A court should exclude evidence in limine when the evidence is clearly inadmissible on all potential grounds, and it may defer a question until trial supplies the context. *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008).

Plaintiff carries the burden. On Point II plaintiff must show that the proffered evidence has no tendency to make a fact of consequence more or less probable, Fed. R. Evid. 401, or that the danger of unfair prejudice substantially outweighs whatever probative value the evidence carries, *id.* R. 403. On Point III plaintiff must show that the communications came during compromise negotiations over a claim disputed as to validity or amount, and that defendant offers them to disprove the validity of that claim. *Id.* R. 408(a).

## POINT II. THE COURT SHOULD PRECLUDE EVIDENCE AND ARGUMENT CONCERNING THE RACE OR ETHNICITY OF THE CLUB'S MEMBERS

Defendant's counsel asked Commodore Richard Ross at his deposition whether there are any Black individuals who are current members of the Red Hook Boat Club. Ross answered no. Counsel then asked whether Ross had any problems with that. Ross answered that the question was unfair, observed that the town has a very small population of Black individuals, and said that he has no problem with people of different ethnicities. (Ross Dep. 17:19-18:5.)

Q Are there any black individuals who are current members of the Red Hook Boat Club?

A No.

Q Do you have any problems with that?

A I think that's a very unfair question, Mr. Rodd. If you look at other organizations, we have a very small population of black individuals in this town. Do I specifically have a problem with

people of different ethnicities? Absolutely not,
and that's why I think that's a very unfair
question, sir.

Plaintiff must prove that it holds an interest protected by the First Amendment, that its exercise of that right motivated or substantially caused the Town's actions, and that those actions caused it injury. *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Defendant may then show that it would have reached the same decision anyway. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The racial makeup of the Club's roster proves nothing about what the Club said, about why the Board acted, or about what the Club lost. Fed. R. Evid. 402 bars irrelevant evidence. *Id.*

The Board issued a Determination and Findings that rests on public access to the Hudson River. Whether the Board acted on that reason or on retaliation is the question for trial. Testimony about the race of the Club's members, and any effort to paint the members as racists, misdirects the inquiry toward a judgment about the kind of institution the Club is and away from what Supervisor McKeon and the three members who voted with him did and why. Fed. R. Evid. 403 reaches evidence that carries that danger. *Id.*

Fed. R. Evid. 404 bars character evidence offered to show that a party acted in accordance with its character. *Id.* R. 404(a)(1). Counsel's questions sought a concession about the character of the Club and its Commodore. They sought no fact about what the Town did. Should the Court admit the subject, plaintiff will examine on the questioning as proof of the Town's animus toward the Club and its members.

**<u>POINT III. FED R. EVID. 404 AND 408 EXCLUDE THE APRIL 8 AND MAY 2, 2025, COMMUNICATIONS BETWEEN COUNSEL</u>**

Plaintiff commenced its Article 78 proceeding on February 21, 2025. (JPTO ¶ 6(A)(viii)(i).) The Town retained Hodgson Russ LLP on March 19, 2025, for assistance with the acquisition of property from the Red Hook Boat Club and a potential eminent domain action. (Testa Dep. 68:9-69:20; P-9.) On March 31, 2025, an attorney from that firm contacted the Boat Club's counsel, and they discussed resolutions short of eminent domain. In light of this disclosure, plaintiff amended the Article 78 petition to add a segmentation claim, i.e., that the environmental impact review of the rezoning had been impermissibly segmented from the environmental review of the taking itself. (JPTO ¶ 6(A)(viii)(k).)

On April 8, 2025, plaintiff's counsel wrote to Daniel Spitzer of Hodgson Russ that the Boat Club has never had and does not currently have any interest in pursuing a deal with the Town. (Ross Dep. 75:7-24; D-M.) Spitzer wrote on May 2, 2025, asked whether the parties could set up a meeting in the next few days to discuss alternatives to eminent domain, and heard back from plaintiff's counsel that there would be no meeting. (Ross Dep. 73:8-17; D-K.) In another message in the same series Spitzer wrote that the Town continues to believe an alternative path forward is in the best interests of all parties, and he reserved all of the Town's rights. (Ross Dep. 78:3-13; D-N.) Defendant listed the exchanges as Exhibits K, M, and N.

MR. HURST: Just now, he means today.
A Oh. Yes.
Q Okay.
MR. HURST: You're not copied on those emails. You wouldn't have gotten them.
Q Are you aware that Mr. Spitzer wrote on May 2 to your attorney, and I'm reading from the last part

of the email, "Therefore can we set up a meeting in the next few days to discuss alternatives to eminent domain. Please let me know."
Do you see that?
A Yes.
Q And do you see that Mr. Hurtz replied in the first sentence, "There will be no meeting"?
A I do.
Q Did you know that Mr. Hurtz made that statement?
MR. HURST: Hurst, H-u-r-s-t, Adam.
MR. RODD: Hurst?
MR. HURST: Yes.
MR. RODD: What did I say?
MR. HURST: Hurtz, three times.
MR. RODD: I'm sorry. Don't take offense, it's just I'm tired.
Q Do you see that Mr. Hurst replied "There will be no meeting."
A Yes.
Q And was Mr. Hurst accurately conveying the position of the Boat Club as of that time?
A He was communicating with the Board throughout this, yes.
A May I have both of these at the same time here?

Q You can if you want. I'm just referring you to Defendant's Exhibit M.

MR. HURST: I'm sorry, are you done questioning him on F? I think that was his question.

MR. RODD: Yes.

MR. HURST: Thanks.

Q And just directing you to the first page of Defendant's Exhibit M, Mr. Hurst wrote an email to Daniel Spitzer on April 8, 2025 at 11:47:42 a.m. and there's a sentence in that email that reads, and it's on page 1: "I'm not sure what you may have heard but the Boat Club has never had nor does it currently have any interest in pursuing a deal with the Town."

Do you see that?

A Yes.

Q And does that part of the email accurately convey the position of the Red Hook Boat Club at that time?

A Yes, and I'll tell you why.

Q I'm just asking if it does.

A April 8th. We first found out about this on March 31st. 7 or 8 days later you ask me how I

feel after you kicked my dog?

76:1 MR. HURST: I'm going to make a nunc pro tunc objection to the extent these appear to be discussions regarding compromise or settlement that we thought we had agreed not to get into?

MR. RODD: It's noted. This is the dialogue towards the vote of eminent domain.

MR. HURST: Looks like a dialogue on how to resolve the case.

MR. RODD: I disagree with that.

MR. HURST: That's fine. You made a record.

A In fact, the second to last sentence says, "That possibility wasn't even on their radar until your call last week." One week's time.

MR. HURST: Wait for a question.

78:3 Q Well, actually just on the first page do you see on Exhibit N there's an email from Mr. Spitzer, and I'm reading from the, towards the end of the last paragraph: "The Town continues to believe an alternative path forward is in the best interests of all parties. I look forward to reviewing the action and reserve all rights of

the Town. Thank you for your continuing courtesies."

Do you see that?

A Yes.

Q And do you see that Mr. Hurst replied to that email: "Thanks for your opinion, Dan. Save it next time."

A Yes.

Q Do you see that? As of that time did you discuss with the Town prior to July 15, 2025 your interest in a dialogue on an alternative path forward?

MR. HURST: Object to the form. Inquires into offers of compromise and settlement.

Q You can answer.

A I'm not exactly sure. There was nothing that came to me from Robert or any of the Town Council members that was trying to establish any kind of partnership, if that answers the question.

Q Did Mr. McKeon prior to July 15, 2025 request to meet with you?

A Yes.

Q And you did not meet with Mr. McKeon before July 15, 2025.

MR. HURST: Outside of public meetings.
A I did not.
Q Okay.
A I'm confusing the meeting that we met at Bread
Alone with. That was after July 15.
Q Correct.
A So restate that question for me.
MR. HURST: I think he asked whether you
had met before July 15th.
A Oh, in person before July 15th? No, we never
met.

Fed. R. Evid. 408(a) makes inadmissible, on behalf of any party, conduct or a statement made during compromise negotiations about a claim, when a party offers it to prove or disprove the validity or amount of a disputed claim. The rule reaches statements as well as offers, and it applies whether the party offering the evidence made the statement or received it. It protects negotiations surrounding a claim disputed as to validity or amount. *Trebor Sportswear Co. v. Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989).

A disputed claim was pending when Spitzer wrote. The Town had hired his firm for the acquisition and for a potential condemnation. Both messages run lawyer to lawyer, and both address whether the parties would meet and what might replace the taking. The testimony is also irrelevant. Fed. R. Evid. 408 allows the Court to exclude exchanges of that kind.

Defendant's counsel supplied the characterization himself. When plaintiff's counsel objected at the deposition to questioning that appeared to concern compromise or settlement, defendant's counsel answered that this is the dialogue towards the vote of eminent domain. (Ross Dep. 76:1-7.)

Plaintiff's counsel objected again when defendant turned to the May 2 exchange, on the ground that the questioning inquired into offers of compromise and settlement. (Ross Dep. 78:22-23.)

Defendant offers the emails to show that plaintiff refused to negotiate, and from that refusal to argue that the Board condemned for a legitimate reason. Fed. R. Evid. 408(a) forecloses that use. *Id.* What remains is the suggestion that plaintiff's counsel answered curtly, and that bears on no issue before the Court.

Exhibits K, M, and N would also put the words of plaintiff's trial counsel before the Court as those of a declarant no party will call, and they invite comment on his tone. Fed. R. Evid. 403 supplies an independent ground for excluding them. And if the Court concludes that the communications between the Town and the Club during this period form a single course of dealing that either comes in whole or stays out whole, plaintiff does not oppose the exclusion of its own June 30, 2025, letter to Supervisor McKeon.

**CONCLUSION**

The Court should preclude defendant from offering evidence, eliciting testimony, or arguing about the race or ethnicity of the Club's members. The Court should preclude Defendant's Exhibits K, M, and N and any testimony or argument about the April 8 and May 2, 2025, communications between counsel. That preclusion should reach any argument that plaintiff refused to negotiate.

Dated: Delmar, New York
September 2, 2026

HURST LAW FIRM PLLC

*William Allen Hurst*

William Allen Hurst, Esq.
Attorneys for Plaintiff
Red Hook Boat Club, Inc.
357 Delaware Avenue, P.O. Box 116
Delmar, New York 12054
Tel.: (518) 849-8652
whurst@hurstlawyer.com

**CERTIFICATE OF COMPLIANCE**

I certify under Local Civil Rule 7.1(c) that this memorandum contains 2,660 words, exclusive of the caption, the signature block, and this certificate, and therefore complies with the limits of the Local Civil Rules and the Court's Individual Practices. The word processing program used to prepare the memorandum generated the word count.

William Allen Hurst